***********
Upon review of the competent evidence of record with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission modifies the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the N.C. Workers Compensation Act and the N.C. Industrial Commission has jurisdiction over this matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to the misjoinder or nonjoinder of parties.
3. On September 2, 2008, an employment relationship existed between Plaintiff and Employer-Defendant.
4. Liberty Mutual Insurance Company is the carrier on the risk for Employer-Defendant.
5. The average weekly wage is to be determined.
6. A package of Industrial Commission Forms is admitted into evidence as Stipulated Exhibit #2.
7. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit #3.
8. A written statement by Ed Cox is admitted into evidence as Stipulated Exhibit #4.
9. Stipulated Exhibit #5, admitted into evidence, is a print-out of benefits by the Carrier-Defendant.
 ***********
Based upon the preponderance of the evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff's date of birth is July 3, 1948, and he was 62 years of age at the date of hearing before the Deputy Commissioner. Plaintiff has a high school diploma and two years of community college. On September 2, 2008, Plaintiff was employed by Defendant-Employer as a credit sales coordinator. He had been employed with Defendant-Employer since 1991, when it was previously called "Carolina Builders." He had served in various capacities over the years, including an accounts receivable agent, a purchasing agent, and in a stock receiving position. *Page 3 
2. On September 2, 2008, Plaintiff sustained a compensable injury arising out of and in the course of his employment when he tripped and fell. Plaintiff reported the incident to his supervisor and a Form 19 was completed the next day.
3. Prior to this date, Plaintiff had a significant medical history with regard to his lower back and left knee. In 1972, Plaintiff sustained a lower back injury while playing baseball, which required surgical intervention. Plaintiff underwent a second surgery on his lower back in 2006. Plaintiff underwent his first knee surgery in 1965. On March 10, 2008, Dr. John Chiavetta performed a total left knee replacement.
4. On September 2, 2008, Plaintiff was walking down the hallway at work when he stumbled on a tear in the carpet, causing him to fall and land on his left knee. This fall was witnessed by Ed Cox.
5. Plaintiff continued to work after the fall. However, due to pain and stiffness in his knee over the upcoming weeks, he eventually decided to seek medical treatment.
6. Defendants initially accepted Plaintiff's injury on March 20, 2009, by completing a Form 63, Section 2. There was no specific body part filled in on the Form 63. Defendants sent Plaintiff to Concentra Medical Care for treatment with Dr. Paul Mele on January 30, 2009. Plaintiff explained the fall at work on September 2, 2008, as well as his previous back and knee surgeries. Dr. Mele referred Plaintiff to Dr. John Chiavetta (Plaintiff's previous knee surgeon); to Dr. Robin Koeleveld (Plaintiff's previous neurosurgeon); and Dr. Conrad Flick (Plaintiff's family doctor). Dr. Mele kept Plaintiff at full duty, as he had already been working since the injury. Defendants ultimately arranged for Plaintiff to see Dr. David Jones for his knee and Dr. William Lestini for his back. *Page 4 
7. On February 24, 2009, Plaintiff saw Dr. Jones for his knee. Dr. Jones took x-rays and also recommended a bone scan to rule out a fracture. Plaintiff returned to Dr. Jones on March 23, 2009, and the medical record reflects that Plaintiff was assessed with "possible loosening of the patellar component status post fall at work." Plaintiff's pain was persistent and there was increased blood flow in that area of his knee. The possibility of surgery was discussed.
8. On March 6, 2009, Plaintiff saw Dr. Lestini for his low back pain. Dr. Lestini indicated Plaintiff could continue working, prescribed pain medicine, and ordered a thoracic and lumbar MRI. The MRI revealed degenerative changes in the lumbar region, but also revealed a possible lesion in the thoracic area. Dr. Lestini referred Plaintiff to Dr. Paul Peterson at Duke Neurology since the lesion was located within the cord. Plaintiff saw Dr. Peterson who recommended repeat scans in four months.
9. Plaintiff last worked on March 25, 2009, when he was written out of work by Dr. Lestini.
10. Plaintiff again saw Dr. Lestini on May 19, 2009. A discogram was recommended and Dr. Lestini wanted to confer with Dr. Jones as to whether the knee or back problems should be addressed first. Dr. Lestini also gave Plaintiff an out of work note pending workup of his knee and back complaints.
11. On June 4, 2009, Defendants filed a Form 61 indicating a total denial of indemnity or medical compensation.
12. Dr. Conrad Flick is a board certified specialist in family medicine who has been involved with Plaintiff's general care since 2000. Dr. Flick testified that Plaintiff "started really complaining of some knee issues in 2003." Throughout 2004 and 2005, Plaintiff's complaints *Page 5 
regarding his left knee pain increased. Dr. Flick stated that Plaintiff first mentioned "back issues" in 2005 and 2006.
13. Although Plaintiff previously experienced back and knee issues and had undergone surgery prior to September 2, 2008, Plaintiff had returned to regular duty prior to the work injury. He was still active and his knee and back were stable, with just intermittent pain. An MRI of the lumbar spine prior to the injury revealed degenerative changes at multiple levels.
14. The Full Commission finds, based upon the preponderance of the evidence, that Plaintiff's pre-existing back condition and pre-existing knee problems were aggravated by the fall at work on September 2, 2008. This aggravation resulted in additional surgery and Plaintiff being out of work from March 26, 2009 and continuing.
15. Plaintiff first presented to Dr. John Chiavetta, a board certified orthopedist specializing in hip and knee replacement surgery, on October 31, 2005, complaining of left knee pain. Following a physical examination, Dr. Chiavetta diagnosed Plaintiff with left knee osteoarthritis and administered a cortisone injection.
16. On January 22, 2008, Dr. Chiavetta noted limited range of motion and valgus pseudo instability in Plaintiff's knee. Plaintiff elected to proceed with knee replacement surgery, which was subsequently scheduled for March 10, 2008.
17. On June 6, 2008, Plaintiff was still unable to fully straighten his left leg at a follow up with Dr. Chiavetta. During the same appointment, Plaintiff complained of pain in his lower back. Dr. Chiavetta noted a history of lumbar spine surgery as well as degenerative changes. Dr. Chiavetta opined that Plaintiff's back condition was playing a "significant role in his knee pain" at the time. *Page 6 
18. On June 17, 2008, less than three (3) months before his alleged injury by accident, Dr. Chiavetta's medical record reflects that Plaintiff complained of popping and mild to moderate discomfort in his left knee. Furthermore, Plaintiff reportedly experienced a "significant amount of pain on three (3) days" the previous week and was unsure as to what caused it.
19. On September 23, 2008, Dr. Chiavetta reexamined Plaintiff's knee after the September 2, 2008 fall at work. At that time, Plaintiff was experiencing a significant increase in continuous knee pain after the fall. The pain was constant, worse with getting up and with significant walking. Dr. Chiavetta did not note any objective evidence of complications or fractures of the knee replacement. He diagnosed Plaintiff with a contusion of the knee and opined that his condition would improve on its own.
20. On June 23, 2009, Dr. Chiavetta found no objective evidence that would suggest any trauma to Plaintiff's left knee. Dr. Chiavetta classified Plaintiff's knee as "stable" and opined that his perceived knee pain might be neurogenic in nature and originating in his back.
21. On August 3, 2009, Plaintiff presented to Dr. Craig T. Derian, a board certified orthopaedic surgeon, specializing in adult lumbar problems. Plaintiff complained of low back pain and intermittent right lower extremity spasms, numbness.
22. On September 10, 2009, Plaintiff reported to Dr. Derian that his left knee seemed to be stable and agreed with Dr. Chiavetta that his symptoms may be coming from his back. Therefore, he decided to proceed with a lumbar decompression L2 to the sacrum, with a fusion from L2 to L4, with instrumentation and left iliac crest bone graft, which was performed by Dr. Derian on October 27, 2009. *Page 7 
23. During his treatment of Plaintiff, Dr. Derian was unaware that there was a workers' compensation aspect to his case. Plaintiff was no longer working at that time, and Dr. Derian did not address Plaintiff's return to work status in any of his medical reports. As of the date of Dr. Derian's deposition on October 11, 2010, he opined that Plaintiff could perform a sedentary light duty job where he should change positions between sitting, standing and walking. Plaintiff should also avoid prolonged bending, stooping, or lifting over twenty (20) pounds. Dr. Derian did not place Plaintiff at maximum medical improvement, although he opined in his deposition that Plaintiff may have a 35% permanent partial impairment to his back.
24. Plaintiff has been out of work since March 25, 2009. During this time, Plaintiff received Short Term Disability from an entirely Employer funded plan. Following this, Plaintiff has received Long Term Disability from a plan that he paid for himself. Based upon the preponderance of the evidence in the record, the Full Commission finds that Plaintiff's fall at work on September 2, 2008, aggravated and exacerbated his pre-existing knee and back problems to the extent that he has been unable to work since March 25, 2009.
25. Based upon the preponderance of the evidence in the record, the Full Commission finds that Plaintiff may require job retraining and would benefit from a vocational evaluation and assistance.
26. As of the date of hearing before the Deputy Commissioner, Plaintiff was still having problems with his knee and would benefit from additional treatment and testing from Dr. Chiavetta. Based on the preponderance of the evidence in the record, the Full Commission finds that Plaintiff's knee has not reached maximum medical improvement.
27. With regard to Employee-Plaintiff's alleged psychiatric issues, Dr. Flick testified at his deposition that it would be reasonable for Plaintiff to undergo a psychiatric evaluation for *Page 8 
depression. Although Plaintiff had experienced some depression prior to the work injury, he is having a difficult time adjusting to not working and being able to provide for his family. Plaintiff has also experienced chronic pain since the fall on September 2, 2008, which may be contributing towards depression. Based on the preponderance of the evidence in the record and the credible medical evidence of record, the Full Commission finds that Plaintiff should undergo a psychiatric evaluation by a qualified physician of Defendants' choosing
28. The Full Commission finds that as of the date of the Deputy Commissioner's Opinion and Award, Defendants had not yet submitted a Form 22 in this matter, which is necessary to determine the correct average weekly wage and compensation rate. The Deputy Commissioner's Opinion and Award ordered that "[i]f the parties are unable to stipulate as to the correct compensation rate, Defendants shall provide to the undersigned a properly executed Form 22 within 15 days of the date of this decision." A review of the record indicates that no such Form 22 was filed as of the filing date of this Opinion and Award.
29. The Full Commission finds that it was reasonable to conduct a hearing in this matter to clarify the issues and Defendant did not pursue litigation in this case without reasonable ground.
 ***********
Based upon the foregoing Stipulations, and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his left knee and his lower back on September 2, 2008, which aggravated and exacerbated his pre-existing problems. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. As a result of his compensable injury, Plaintiff is entitled to temporary total disability at his compensation rate to be determined by a Form 22 from March 25, 2009, and continuing until further Order of the Commission. Defendants are entitled to a credit for those amounts of short term disability that Plaintiff has received. N.C. Gen. Stat. §§ 97-29, 97-42.
3. As a result of his compensable injury, Plaintiff is entitled to medical treatment reasonably required to effect a cure, provide relief or lessen Plaintiff's period of disability. This includes a psychiatric evaluation by a qualified physician of Defendants' choosing. Dr. John Chiavetta is designated as Plaintiff's authorized physician for his left knee and Dr. T. Craig Derian is designated as authorized for Plaintiff's back. Dr. Conrad Flick is further authorized to provide routine pain management when necessary to supplement the other physicians. N.C. Gen. Stat. § 97-25.
4. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. If the parties are unable to stipulate as to the correct compensation rate, Defendants shall provide to the Full Commission a properly executed Form 22 within seven (7) days of the filing date of this Opinion and Award. The stipulation or properly executed Form 22 shall be provided in writing to Abigail M. Hammond, law clerk to Pamela T. Young, Chair, within the said seven (7) days. Once the compensation rate is established, Defendants shall pay to Plaintiff his compensation rate from March 25, 2009, and continuing until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum. All amounts *Page 10 
shall be subject to the short term disability benefits paid and to a reasonable attorney fee in paragraph 3 of this Award.
2. Defendants shall provide medical compensation to Plaintiff necessary to reasonably effect a cure, give relief or lesson his period of disability. This includes a psychiatric evaluation/examination with a qualified physician of Defendants' choosing as well as vocational rehabilitation. The psychiatric evaluation/examination shall be scheduled within seven (7) days of the filing date of this Opinion and Award. Notice of the scheduled appointment shall be provided in writing to Abigail M. Hammond, law clerk to Pamela T. Young, Chair, within the said seven (7) days. Dr. Chiavetta, Dr. Derian and Dr. Flick are all authorized physicians for Plaintiff.
3. Defendants shall deduct twenty-five percent (25%) of the amounts awarded in Paragraph 1 of this Award and pay these amounts directly to Plaintiff's counsel as reasonable attorney fees.
4. Defendants shall bear the costs.
This the ___ day of September 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 11 
 S/___________________ TAMMY R. NANCE COMMISSIONER *Page 1